# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                   )
**STEPHEN KELLEHER,**              )
                                   )
    **Plaintiff,**       )
                                   )
    v.                   )    Case No. 1:16-cv-02092 (APM)
                                   )
**DREAM CATCHER, L.L.C., et al.,** )
                                   )
    **Defendants.**       )
_____)

## MEMORANDUM OPINION AND ORDER

    Before the court are two separate Motions to Dismiss Plaintiff Stephen Kelleher's Amended Complaint. In one, Defendants Cesar De Armas and Heidi Schultz move to dismiss all claims brought against them. *See* Indiv. Defs.' Mot. to Dismiss, ECF No. 15 [hereinafter Indiv. Defs.' Mot.]. In the other, Defendant Dream Catcher, L.L.C., moves to dismiss Counts III, VI, and VII of the Amended Complaint. *See* Def. Dream Catcher, L.L.C.'s Mot. to Dismiss Counts III, VI, and VII, ECF No. 16 [hereinafter Dream Catcher Mot.]. For the reasons that follow, the Motions are granted in part and denied in part.

    **Background**. Defendant Dream Catcher, L.L.C., is a Washington, D.C.-based construction company wholly owned by Defendants Cesar De Armas and Heidi Schultz (the "Individual Defendants"). Am. Compl., ECF No. 13 [hereinafter Am. Compl.], ¶¶ 4, 8. According to the Amended Complaint, Plaintiff hired Defendants to perform construction and renovation work on a home owned by Plaintiff. *Id*. ¶ 9. When the project went awry, Plaintiff filed a Complaint, advancing contract, quasi-contract, and tort claims, as well as two putative statutory claims under District of Columbia law. *See* Notice of Removal, ECF No. 1, Compl., ECF No. 1-1. On December 23, 2016, the court dismissed the original Complaint against the

Individual Defendants because it failed to allege sufficient facts to support holding Individual Defendants liable for Dream Catcher's alleged misconduct on an alter ego, or veil-piercing, theory of liability. *See* Mem Op & Order, ECF No. 11.

On January 10, 2017, Plaintiff filed an Amended Complaint alleging further facts in support of his claims, with particular focus on buttressing his claims against the Individual Defendants. *See* Am. Compl. The Individual Defendants again moved to dismiss, arguing that the Amended Complaint fares no better than the original Complaint in establishing alter ego liability. *See* Indiv. Defs.' Mot. at 3–6. Separately, Dream Catcher filed a Motion to Dismiss Counts III, VI, and VII of the Amended Complaint, asserting that: (1) Plaintiff cannot advance quasi-contract claims because the Amended Complaint "concedes that a contract exists" (Count III); (2) Plaintiff's "statutory" claim under the District of Columbia municipal regulations governing home improvement contractors fails because those regulations do not provide a private right of action (Count VI); and (3) Plaintiff's fraud claim is fatally flawed because he has not pleaded any fraudulent conduct that is distinct from his breach of contract claims (Count VII). *See* Dream Catcher Mot. The Individual Defendants joined in Dream Catcher's motion to dismiss Count VII. *See* Indiv. Defs.' Mot. at 6–7.

The court now turns to assess Defendants' asserted grounds for dismissal under the "plausibility standard" of *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 556–57 (2007).

**Alter Ego Liability (All Counts)**. The court begins with the Individual Defendants' argument that the Amended Complaint fails to allege facts sufficient to support an alter ego, or veil-piercing, theory of liability. The D.C. Circuit has found it appropriate to pierce the corporate veil when "the corporation, rather than being a distinct, responsible entity, is in fact the alter ego

2

or business conduit of the person in control." *Labadie Coal Co. v. Black*, 672 F.2d 92, 97 (D.C. Cir. 1982). In making that determination, courts generally inquire as to "whether corporate formalities have been observed; whether there has been commingling of corporate and shareholder funds, staff and property; whether a single shareholder dominates the corporation; whether the corporation is adequately capitalized; and, especially, whether the corporate form has been used to effectuate a fraud." *Ruffin v. New Destination, LLC*, 773 F. Supp. 2d 34, 40 (D.D.C. 2011). "Although a plaintiff need not 'show at the pleadings stage . . . [that which] he needs to show to prevail at trial, the plaintiff must still allege sufficient facts regarding an alter ego relationship to satisfy Rule 8(a)(2) and *Iqbal*." *Motir Servs., Inc. v. Ekwuno*, 191 F. Supp. 3d 98, 109 (D.D.C. 2016) (alteration in original) (internal quotation marks omitted).

The Amended Complaint alleges the following relevant facts: (1) although Plaintiff had advanced Dream Catcher "tens of thousands of dollars" to purchase and install a skylight and to buy appliances and cabinets, Dream Catcher did not purchase the skylight or pay its suppliers in full for the appliances and cabinets, Am. Compl. ¶¶ 19–20; (2) Dream Catcher admitted that it was "strapped for cash" and could not make payments to vendors on Plaintiff's project until it received a check from another job, *id.* ¶ 20; (3) on another project unrelated to Plaintiff's, Dream Catcher had to rely on a cash advance from a different client to fund the project, *id.* ¶ 21; (4) Dream Catcher and the Individual Defendants shared the same address, *id.* ¶ 25; (4) the Individual Defendants borrowed money in their individual capacities from one of Dream Catcher's clients to fund another client's project, and Defendant de Armas repaid that debt with his personal funds only after the client filed suit, *id.* ¶ 26; (5) the Individual Defendants used funds from the sale of their house to satisfy Dream Catcher's financial obligations, *id.* ¶ 28; and (6) "upon information and belief," the

3

Individual Defendants deposited funds payable to Dream Catcher "into a college fund, savings account, or similar bank account in the name of their daughter," *id*. ¶ 27.

The court finds that the foregoing allegations support a plausible alter ego theory of liability. The Amended Complaint contains sufficient factual matter, taken as true, which establishes that: (1) the Individual Defendants commingled corporate and personal funds, *id.* ¶¶ 26–28; (2) Dream Catcher was undercapitalized, *id.* ¶¶ 19–21, 26; (3) Dream Catcher and the Individual Defendants shared a common address, *id.* ¶ 25; and (4) the Individual Defendants did not observe corporate formalities, *id.* ¶¶ 26–28. *See Ruffin*, 773 F. Supp. 2d at 41. Taken together, those facts paint a plausible picture of a closely held corporation that "is in fact the alter ego or business conduit" of the Individual Defendants. *Labadie Coal Co.*, 672 F.2d at 97.

The Individual Defendants' arguments to the contrary are unconvincing. First, they insist that the Amended Complaint establishes, at most, "a financially independent entity with multiple revenue streams," rather than an undercapitalized corporation. Indiv. Defs.' Mot. at 5. Not so. The Amended Complaint depicts a corporation that: (1) is unable to pay vendors in full or complete projects despite advance payments from clients; (2) requires financing from some clients to perform projects for other clients; and (3) lacks sufficient operating capital to fund existing obligations without first receiving outstanding payments. And then, of course, there is Dream Catcher's admission that it was "strapped for cash." These allegations easily give rise to a plausible inference that Dream Catcher was undercapitalized. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 556–57.

Next, the Individual Defendants contend that *Iqbal* and *Twombly* require the court to disregard the allegation that they deposited funds payable to Dream Catcher into an account in their daughter's name because that allegation is made on "information and belief." Indiv. Defs.'

4

Mot. at 5. *Iqbal* and *Twombly* did not, however, eliminate pleading in that manner. A plaintiff still may plead on "information and belief" "where the facts are peculiarly within the possession and control of the defendant." *Evangelou v. District of Columbia*, 901 F. Supp. 2d 159, 170 (D.D.C. 2012) (internal quotation marks omitted). Here, Plaintiff simply has no way to access, without the benefit of discovery, the financial records necessary to confirm the Individual Defendants' alleged improper diversion of corporate funds for personal use, and thus that particular allegation is appropriately advanced on "information and belief" to support Plaintiff's theory of alter ego liability.

Finally, the Individual Defendants maintain that no inference of alter ego liability can arise from their alleged use of personal assets to satisfy Dream Catcher's debts and obligations. Indiv. Defs.' Mot. at 5. That bald assertion, however, flies in the face of the well-settled proposition that a key factor in deciding whether to pierce the corporate veil is "whether corporate funds and assets have been extensively intermingled with personal assets." *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 470–71 (D.C. 2008). Plaintiff's averment that the Individual Defendants routinely used their personal assets to pay off Dream Catcher's debts thus supports Plaintiff's alter ego theory of liability.

In summary, the court finds that the Amended Complaint alleges sufficient facts which, taken as true, make out a plausible claim of alter ego liability.

**Quasi-Contract Claims (Count III).** Next, Dream Catcher argues that Plaintiff's unjust enrichment and quantum meruit claims (Count III) must be dismissed for failure to state a claim, because quasi-contract claims are inappropriate in light of Plaintiff's concession "that a contract exists" in this case. Dream Catcher Mot. at 2. Defendants are correct that, under District of Columbia law, a plaintiff cannot advance quasi-contract claims where there is an existing contract.

5

*See Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C. 2010). Here, however, dismissal of Plaintiff's quasi-contract claims would be premature because Dream Catcher does not admit such a contract existed. *See* Def. Dream Catcher's Answer, ECF No. 4 (generally denying all allegations in the Complaint). Thus, at this juncture, Plaintiff is well within his right to plead both contract and quasi-contract claims as alternative theories of liability. *See id.*; *see also Nevius v. Africa Inland Mission Int'l*, 511 F. Supp. 2d 114, 122 n.6 (D.D.C. 2007). Accordingly, the court declines to dismiss Count III of the Amended Complaint.

**District of Columbia Home Improvement Contractors Law (Count VI).** Dream Catcher's challenge to Count VI fares much better. That count alleges as a stand-alone cause of action that Dream Catcher is liable to Plaintiff for violating two provisions of the District of Columbia Home Improvement Contractors Law ("D.C. Home Contractor Law"). Am. Compl. ¶¶ 32, 61–65 (citing *See* D.C. MUN. REGS. tit. 16, §§ 808, 811). That claim fails, however, because, as Dream Catcher contends, the D.C. Home Contractor Law does not provide a private right of action.

The municipal regulations that Dream Catcher allegedly violated do not, on their face, provide a private right of enforcement. *See* D.C. MUN. REGS. tit. 16, §§ 808, 811. So, the burden is on Plaintiff "to demonstrate that, in spite of the absence of any explicit authorization, the D.C. Council intended to imply a right to sue for damages for violations of" the D.C. Home Contractor Law. *Coates v. Elzie*, 768 A.2d 997, 1001 (D.C. 2001). Plaintiff, however, makes no effort to satisfy his burden. *See* Pl.'s Opp'n to Dream Catcher Mot., ECF No. 18 [hereinafter Pl.'s Opp'n], at 1. All he does is assert—wrongly—that *the defendant* bears the burden of demonstrating the absence of a private right of action. *Id.* Because Plaintiff has not shown that

the D.C. Council intended for there to be a private right of action under the D.C. Home Contractor Law, the court dismisses Count VI of the Amended Complaint.[1]

**Fraud (Count VII).** Finally, as to Count VII, the court agrees that Plaintiff has failed to state a claim of common law fraud. "District of Columbia law requires that the factual basis for a fraud claim be separate from any breach of contract claim that may be asserted." *Plesha*, 725 F. Supp. 2d at 113; *see also Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008) ("[T]he tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship."). Here, however, Plaintiff's fraud claim rests entirely on the same acts that form the basis of his breach of contract claims. Plaintiff's fraud claim is premised on the allegation that Defendants falsely represented that they would purchase and install a skylight, cabinetry, and appliances. Am. Compl. ¶ 67. That allegation, however, is indistinct from Plaintiff's contract claims. *See id.* ¶¶ 11–12 (describing as part of the scope of work Defendants' failure to purchase and install a skylight, cabinetry, and appliances). Defendants' alleged unfulfilled promises to perform certain work, therefore, do not constitute an actionable fraud claim. *Plesha*, 725 F. Supp. 2d at 113. Accordingly, the court will dismiss Count VII of the Amended Complaint.

\* \* \*

---

[1] The court declines Plaintiff's alternative request to "construe Count VI as a claim for negligence." Pl.'s Opp'n at 1. That request is precluded by the rule that "a plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss." *Park Civic Ass'n v. Gray*, 27 F.Supp.3d 142, 160 n.7 (D.D.C. 2014).

For the foregoing reasons, the court grants in part and denies in part both Defendant Dream Catcher's and the Individual Defendants' Motions to Dismiss. The court dismisses Counts VI and VII as to all Defendants. As to all other counts, the Motions are denied.

Dated: August 15, 2017

_____
Amit P. Mehta
United States District Judge