UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHEN KELLEHER, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )     Case No. 1:16-cv-02092 (APM) <br> ) |
| DREAM CATCHER, L.L.C., et al., | ) <br> ) |
| Defendants. | ) <br> ) |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order sets forth the reasons for the court's oral ruling, entered at the hearing held on September 15, 2017, denying Defendants Cesar de Armas and Heidi Schultz's ("Individual Defendants") Application for Stay Pending Arbitration ("Motion"). *See* Ind. Defs.' Appl. for Stay, ECF No. 41 [hereinafter Appl. for Stay]; Hr'g Tr. (draft), Sept. 15, 2017. When denying that Motion, the court also deemed Individual Defendants' Application for Stay and any subsequent appeal to be "frivolous" and, thus, retained jurisdiction over the case.[1]

Individual Defendants' Motion, filed more than ten months after this action began, seeks to invoke an arbitration clause in the contract underlying this litigation (the "Contract") and stay further proceedings in this court pending the results of arbitration. Appl. for Stay at 3–6; *see also* 9 U.S.C. § 3. The court previously denied a similar motion filed by the organizational Defendant, Dream Catcher LLC, on the ground that Dream Catcher had forfeited its right to arbitrate by failing to invoke the right at the "earliest available opportunity," as required under *Zuckerman Spaeder*,

---

[1] Defendant Dream Catcher LLC appealed the court's denial of its Motion to Stay and Compel Arbitration. On September 28, 2017, the D.C. Circuit issued a Per Curiam Order, finding that Dream Catcher's appeal was not frivolous, thereby divesting this court of jurisdiction. As a result, this court stayed this matter in its entirety on that same date. *See* Minute Order, Sept. 28, 2017. Nevertheless, because this written decision reflects the court's reasoning for its earlier oral ruling, the court writes this opinion as if it had issued *before* the D.C. Circuit's Per Curiam Order.

*LLP v. Auffenberg*, 646 F.3d 919, 923–24 (D.C. Cir. 2011). Individual Defendants, taking a different tack than Dream Catcher, argue that they did not forfeit their right to arbitrate despite their ten-month filing delay because they are not named parties to the Contract, and thus did not have a right to invoke the Contract's arbitration clause until the court ruled that Plaintiff Stephen Kelleher had successfully pleaded a claim of alter ego liability against them, thereby subjecting them to potential liability under the Contract. *See* Appl. for Stay at 4. Thus, Individual Defendants maintain, they in fact invoked their arbitration rights at the "earliest available opportunity" by invoking the Contract's arbitration clause after the court made its veil-piercing finding, thereby satisfying *Zuckerman*.

The court concludes Individual Defendants misunderstand when the "earliest available opportunity" to invoke the Contract's arbitration clause arose in this matter. Like Defendant Dream Catcher, Individual Defendants were fully able to invoke their right to arbitration upon filing of Plaintiff's Complaint and failed to do so. Accordingly, Individual Defendants clearly forfeited their right to arbitrate the claims against them. Moreover, the court finds that any appeal of such a straightforward application of *Zuckerman* would be frivolous. Thus, Individual Defendants' Motion is denied, and the court will retain jurisdiction over this matter.

I

The underlying premise of Individual Defendants' position—that their ability to invoke the Contract's arbitration clause hinged on Plaintiff first pleading a plausible alter-ego liability claim against them—is simply wrong. "[A] litigant who [is] not a party to the relevant arbitration agreement may invoke § 3 [of the Federal Arbitration Act] if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). The Contract is governed by the law of the District of Columbia. *See* Def. Dream Catcher's Mot. to

2

Stay, ECF No. 21 [hereinafter Dream Catcher Mot.], Ex. 1, ECF No. 21-1 [hereinafter Contract]. Applying District of Columbia law here, it is plain that Individual Defendants could have invoked the Contract's arbitration clause at the time they were named in the Complaint (1) under the theory that they are third-party beneficiaries to the Contract, or (2) under equitable principles of estoppel.

First, Individual Defendants could have invoked the Contract's arbitration clause at the time Plaintiff filed his Complaint because they are third-party beneficiaries of the Contract. Although the D.C. Court of Appeals has not squarely addressed whether arbitration agreements can be enforced by non-signatories, it is clear under District of Columbia law that a third party may sue to enforce contract provisions if the contracting parties intended for the third party to benefit directly from the contract. *See Hossain v. JMU Props., LLC*, 147 A.3d 816, 820 (D.C. 2016). A third party need not be named in the contract itself to qualify as an intended beneficiary, but his or her identity must be ascertainable from either the terms of the contract or the circumstances surrounding its creation. *See id.* In circumstances similar to those present here, the D.C. Court of Appeals held, in *Hossain v. JMU Properties*, that the sole owner of a closely-held business was a third-party beneficiary of an agreement and could sue to enforce its terms. *See id.* In *Hossain*, the defendant was the sole owner of a tax preparation franchise, JMU Tax, who had negotiated and signed a franchise agreement with the plaintiff on behalf of JMU Tax. The defendant also was the sole owner of a real estate company, JMU Properties, and, in a transaction related to the franchise agreement, negotiated and signed a commercial lease with the plaintiff on behalf of JMU Properties. *See id.* at 818. After the plaintiff fell behind on lease payments, the defendant, acting on behalf of JMU Properties, changed the locks on the leased office space, and the plaintiff sued for wrongful eviction. *Id.* The defendant proceeded to countersue the plaintiff for, among other things, breaching the franchise agreement, and the

plaintiff, in turn, moved to dismiss the counter-claim on the ground that the defendant, in his individual capacity, could not sue for breach of the franchise agreement because he was not a signatory to the agreement—JMU Tax was the "real party in interest for claims arising under the franchise agreement." *Id*. The D.C. Court of Appeals disagreed, holding that the defendant was a third-party beneficiary of the franchise agreement because, as the sole owner of both JMU Tax and JMU Properties, he "clearly stood to benefit" from the commercial arrangements between his businesses and the plaintiff franchisee. *Id*. at 820. Further, the court explained, the defendant's "involvement plainly [was] ascertainable from the four corners of the contract" because he had negotiated and signed both the franchise agreement and the related lease. *Id*. at 820. Accordingly, the non-signatory defendant could counterclaim to enforce the franchise agreement as an ascertainable third-party beneficiary. *See id*.

Based on the allegations in the Amended Complaint, which the court must accept as true at this stage in the litigation, Individual Defendants are third-party beneficiaries of the Contract. First, Individual Defendants' "involvement was plainly ascertainable" from the "four corners" of the Contract; after all, Defendant De Armas signed the Contract on behalf of Dream Catcher and was listed as its "authorized representative." *See* Contract at 1, 9. Second, Plaintiff was clearly aware that Individual Defendants "stood to benefit" from the Contract's creation. According to Plaintiff's own Amended Complaint, Individual Defendants are the sole owners of Dream Catcher, "controlled Dream Catcher, made all material decisions affecting Dream Catcher, and dominated the conduct of Dream Catcher." Am. Compl., ECF No. 13 [hereinafter Am. Compl.], ¶ 73. Moreover, Defendant Schultz obtained a home improvements salesperson's license on behalf of Dream Catcher, *see id*. ¶ 30. Thus, much like the defendant in *Hossain*, Individual Defendants "clearly stood to benefit" from the Contract. *Hossain*, 147 A.3d at 820. Accordingly, as third-

4

party beneficiaries to the contract between Dream Catcher and Plaintiff, Individual Defendants were entitled to enforce the arbitration clause contained therein at the time they were named in the Complaint.

Second, and in addition to their status as third-party beneficiaries of the Contract, Individual Defendants also could have compelled Plaintiff to arbitrate his claims under the doctrine of estoppel. Courts in this jurisdiction have recognized that the doctrine of estoppel permits "a non-signatory . . . [to] compel arbitration with a signatory when the non-signatory is seeking to resolve issues that are intertwined with an agreement that the signatory has signed." *Riley v. BMO Harris Bank, N.A.*, 61 F. Supp. 3d 92, 99 (D.D.C. 2014). For example, where there would be no claim against the non-signatory defendant but for the contract, applying the doctrine of estoppel is appropriate. *See id*. (collecting cases). That is precisely the situation here. Plaintiff's claims against Individual Defendants exist only because of the Contract. Indeed, Plaintiff asserts the exact same claims, based on the same operative set of facts, against the Individual Defendants as he does against Dream Catcher. *See* Am. Compl. ¶¶ 8–80. The only thing distinguishing Defendant Dream Catcher from Individual Defendants is that Plaintiff alleges that Defendant Dream Catcher is directly liable for damages, whereas he alleges that Individual Defendants are liable based on an alter ego theory. Plaintiff's claims against Individual Defendants, therefore, are plainly "intertwined" with those against the signatory to the contract, Defendant Dream Catcher. Thus, under the doctrine of estoppel, Individual Defendants could have moved to compel Plaintiff to arbitrate the claims against them at the time the Complaint was filed, and they did not need to await a threshold determination from this court concerning their potential liability under the Contract before doing so.

\*   \*   \*

In sum, the court finds that Individual Defendants could have compelled Plaintiff to arbitrate his claims upon filing of the Complaint on two separate grounds. First, as third-party beneficiaries of the Contract, District of Columbia law permitted Individual Defendants to invoke the Contract's arbitration clause. *See Hossain*, 147 A.3d at 820. Second, Individual Defendants could have relied on the doctrine of estoppel to compel arbitration. *See Riley*, 61 F. Supp. 3d at 99. Instead of promptly moving to compel Plaintiff to arbitrate his claims against them upon filing of the Complaint, though, Individual Defendants waited over ten months to do so. Even more inexplicably, Individual Defendants allowed five months to pass *after* Defendant Dream Catcher invoked the Contract's arbitration clause before filing the present Motion. *Compare* Dream Catcher Mot. (filed April 10, 2017), *with* Appl. for Stay (filed August 29, 2017). Accordingly, like Defendant Dream Catcher, Individual Defendants failed to invoke their right to arbitrate at the "earliest available opportunity" and, thus, forfeited that right. *See Zuckerman*, 646 F.3d at 923–24.[2]

II

The court also finds that Individual Defendants' Motion to Stay is "frivolous." In the D.C. Circuit, "a non-frivolous appeal from the district court's order [denying a motion to compel arbitration] divests the district court of jurisdiction over those aspects of the case on appeal." *Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, No. 02-7125, 2002 WL 31818924, at \*1 (D.C.

---

[2] The cases cited by the Individual Defendants do not compel a different result. *See* Appl. for Stay at 4–5 (citing *Oehme, van Sweden & Assocs., Inc. v. Maypaul Trading & Servs., Ltd.*, 902 F. Supp. 2d 87 (D.D.C. 2012), and *Signature Tech. Sols. v. Incapsulate, LLC*, 58 F. Supp. 3d 72 (D.D.C. 2014)). Those cases stand for the proposition that, in order for a *signatory* to an arbitration agreement to compel a *non-signatory* to arbitrate claims, the party must first demonstrate to the court that the nonparty is equitably bound by the contract that contains the arbitration clause. This case presents precisely the opposite situation. Here, a *non-signatory* to an arbitration agreement seeks to compel a *signatory* to arbitrate. The cases upon which Individual Defendants rely, therefore, are wholly inapplicable in the present context.

Cir. Dec. 12, 2002). A motion is "frivolous" when its disposition is obvious and the legal arguments are wholly without merit. *See Reliance Ins. Co. v. Sweeney Corp.*, 792 F.2d 1137, 1138 (D.C. Cir. 1986) (quoting *Gattuso v. Pecorella*, 733 F.2d 709, 710 (9th Cir. 1984)). Individual Defendants' argument for their belated filing is not only predicated on a flawed legal theory derived from plainly inapposite case law, *see supra* n.2, but their Motion wholly ignored controlling Supreme Court precedent and pertinent cases from the D.C. Court of Appeals and this District Court that clearly would have enabled them to seek to compel arbitration months earlier. The court, therefore, finds no purpose in staying this matter pending resolution on appeal and retains jurisdiction over it.

III

For the foregoing reasons, the Individual Defendants' Application for Stay Pending Arbitration is denied.

Dated: October 4, 2017

Amit P. Mehta
United States District Judge